# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

KEVIN KEARNS,

   Plaintiff,

   v.

FEDERAL AVIATION
ADMINISTRATION,

   Defendant.

Civil Action No. 17-434 (JEB)

## MEMORANDUM OPINION

Since 2012, Plaintiff Kevin Kearns has been the subject of a number of complaints regarding his conduct at the Federal Aviation Administration. Concerned that such allegations would stymie his future career prospects, Kearns sought documents under the Freedom of Information Act relating to his tenure at the FAA. Filing his first FOIA request in July 2015, followed by a FOIA and Privacy Act request in November 2015, and a third under both statutes in 2016, Kearns sought various agency files and reports he asserts may contain false information. In response, the agency provided Plaintiff with an Accountability Board case report and with two Reports of Investigation and related attachments. These documents detail a series of inquiries into Kearns's conduct at the FAA, including allegations that he had discriminated on the basis of gender and sexual orientation.

The case reports and investigation files were not, however, provided in full. Instead, the agency redacted certain portions of the reports and withheld pages from the files, claiming that FOIA Exemptions 5, 6, and 7(C) protected such information from disclosure. Plaintiff disagreed with this determination and filed the instant lawsuit to challenge these withholdings and the

FAA's decision to not process his July 2015 request under the Privacy Act. Both sides have now moved for summary judgment on Plaintiff's claims. Finding that the disclosure requirements of the Privacy Act do not apply to the documents released in this case and that the agency correctly applied the various FOIA exemptions, the Court will grant Defendant's Motion.

## I.    Background

Kevin Kearns has worked in the FAA's Drug Abatement Division since 2003. See Compl., ¶ 2. The Division falls under the Office of Aerospace Medicine, which oversees compliance with federal law governing drug and alcohol testing. See Def. Statement of Undisputed Material Fact, ¶ 1. Kearns is stationed at the FAA's regional office near Los Angeles. Beginning in 2012, Plaintiff was the subject of several complaints by other FAA employees working in this location. Id., ¶ 2. Believing that these allegations might impede his ability to obtain employment with other federal agencies, Kearns sought to obtain records related to the complaints. See Compl., ¶¶ 6-7.

His quest to unearth records regarding the complaints began on July 4, 2015, when he submitted a FOIA request to the FAA seeking a "copy of Accountability Board case number 2012-0155." SUMF, ¶ 4. Five days later, the FAA acknowledged receipt of Plaintiff's request and designated it as "FOIA 2015-007559." Id., ¶ 6. At the end of that month, on July 31, the FAA responded to the request and provided Kearns with a copy of the case report for Accountability Board case number 2012-0155. Id., ¶ 8. Although the agency gave Plaintiff the case report, which addressed claims that he had discriminated on the basis of gender and sexual orientation and had created a hostile work environment, it redacted the names of individuals and facilities associated with the allegations. Id.; see ECF No. 20 (FOIA Response). In its response letter accompanying the release of the report, the FAA stated that it had redacted such

information in accordance with FOIA's Exemption 6, which permits agencies to withhold information that pertains to an individual "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). As the agency explained, "[S]ince the redacted information involves the possible violations of FAA rules and regulations, the individuals referenced have a significant privacy interest in not having their identities disclosed." Compl., Exh. 2 (FAA Response Letter, July 31, 2015). The FAA stated that it therefore withheld "not only their names but also information that would permit identification of their duty location." Id.

On August 27, 2015, Kearns appealed the FAA's response. He argued that only the names of the associated individuals should have been redacted from the case report and that he had been deprived of additional records in the Accountability Board file. See Compl., Exh. 3 (Appeal of FOIA 2015-007559). On October 30, the FAA denied the appeal. Id., Exh. 4 (Denial Letter). The agency upheld the withholdings under FOIA Exemption 6, stating that "[t]he redactions consist of information that might identify the individuals and information of a highly personal nature." Id. The FAA also told Kearns that the redacted information additionally qualified for withholding under Exemption 7(C), which protects against the unwarranted invasion of personal privacy through the disclosure of law-enforcement information. Id. Finally, the denial letter stated that the "most reasonable interpretation" of the FOIA request was that Kearns was "asking for a copy of the Accountability Board Case Report," and that if he wished to receive additional records, he could "submit a new initial FOIA request." Id.

Not wasting any time, Plaintiff one week later took the FAA up on this suggestion. He submitted a new, follow-up request – this time seeking a "copy of the entire Accountability Board case file 2012-0155, including any signed statement and other records and reports" under

both FOIA and the Privacy Act.  See SUMF, ¶ 12; Compl., Exh. 5 (Privacy Act Request) at 5.

On December 23, the FAA responded by stating that the "complete Accountability Board Case

Number 2012-0155 was sent to you under FOIA request number 2015-007559" and that "no

additional documents" were available from the Board under that case number.  See Compl., Exh.

5 (Letter Denying Privacy Act Request, Dec. 23, 2015).  Plaintiff never filed an appeal of this

determination.  See SUMF, ¶ 14; Declaration of Laurie Karnay, ¶ 9.

     Nearly a year later, Kearns submitted a new FOIA and Privacy Act request.  On

September 16, 2016, he asked the FAA for "a complete copy of internal security investigation

file number AHW20140239 and AHW20150097, including all documents and statements

gathered as part of each investigation."  Compl., Exh. 6 (2016 FOIA and Privacy Act Request).

On September 21, the FAA acknowledged the request and designated it with the reference

number "FOIA 2016-009336."  SUMF, ¶ 23.  One month later, the agency issued its substantive

response, which consisted of releasing to Plaintiff the Reports of Investigation (ROI) and

attachments for both requested security investigations.  See Compl., Exh. 8 (Oct. 24, 2016,

Response).  In its letter, the FAA stated that 1,537 pages were found responsive to Kearns's

request and that, out of that number, "333 pages have redactions and 797 pages are being

withheld in their entirety under FOIA Exemption 6 because [they] have third-party information

not applicable to [Kearns] and the release would be an invasion of [] personal privacy."  Id.  The

rest, the agency determined, could be released to Kearns on a compact disc.  Id.

     On November 3, 2016, Plaintiff appealed this response, asserting that the agency had

inappropriately relied upon FOIA exemptions in redacting the withheld information.  See

Compl., Exh. 9 (Appeal of 2016 Request).  According to Kearns, the agency had erred in citing

FOIA Exemption 6, as under the Privacy Act that exemption could "not be invoked to withhold from a requester information pertaining to himself." Id. at 2.

Four months after filing his appeal, Kearns initiated this lawsuit. On March 10, 2017, he filed a Complaint alleging that the FAA had not adequately responded to his 2015 and 2016 FOIA and Privacy Act requests. See ECF No. 1. With respect to the 2015 one, Kearns alleged that the Agency had erred when it did not consider his request under both FOIA and the Privacy Act and when it determined that he was asking only for the Case Report, rather than the "entire case file." Id., ¶¶ 41-52. With respect to the 2016 request, he claimed that Defendant had improperly withheld "documents that pertained to him" from the investigation files, in violation of the disclosure requirements of the Privacy Act, and that the agency had improperly applied certain FOIA exemptions. Id., ¶¶ 53-63. As relief for these alleged statutory violations, Kearns asked the Court to, inter alia, "[o]rder [the] FAA to process" his 2015 request "under both FOIA and the [Privacy Act]," order the agency to "release all non-exempt, responsive records to [the 2016 FOIA request] . . . under FOIA or the [Privacy Act], whichever compels the greatest degree of disclosure," and to "[o]rder the FAA to expunge all inaccurate and/or unsubstantiated information relating to Plaintiff from his employment file, and from any system of records which is or may be shared with other agencies or employers in the even that [he] seeks employment elsewhere." Compl. at 9-10.

Subsequent to the filing of this suit, the FAA undertook a further review of its response to Kearns's 2016 request for the security-investigation files. See SUMF, ¶ 29. Following this review, the agency released previously redacted information related to file AHW20150091 on June 20, 2017, and related to file AHW20140239 on July 12, 2017. Id., ¶¶ 30-31. On September 21, 2017, the FAA moved for summary judgment. See ECF No. 12-1 (Def. MSJ). Plaintiff

opposed this motion and filed his own Cross-Motion for Summary Judgment. See ECF No. 13-1 (Pl. Opp). After both sides filed their respective replies, see ECF Nos. 18 (Def. Reply), 20 (Pl. Reply), the Court ordered Defendant to produce for *in camera* inspection "all challenged documents withheld in full or in part." Minute Order of March 13, 2018. The agency promptly did so, and the Court has now reviewed them.

## II.    Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact is one that would change the outcome of the litigation. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). In the event of conflicting evidence on a material issue, the Court is to construe the conflicting evidence in the light most favorable to the non-moving party. See Sample v. Bureau of Prisons, 466 F.3d 1086, 1087 (D.C. Cir. 2006). Factual assertions in the moving party's affidavits or declarations may be accepted as true unless the opposing party submits his own affidavits, declarations, or documentary evidence to the contrary. Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

FOIA cases typically and appropriately are decided on motions for summary judgment. See Defenders of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009); Bigwood v. U.S. Agency for Int'l Dev., 484 F. Supp. 2d 68, 73 (D.D.C. 2007). In FOIA cases, the agency bears the ultimate burden of proof. See U.S. Dep't of Justice v. Tax Analysts, 492 U.S. 136, 142, n.3 (1989). The Court may grant summary judgment based solely on information provided in an agency's affidavits or declarations when they describe "the documents and the

justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981)).

## III.    Analysis

The Court begins with a brief overview of the statutory framework governing this case – FOIA and the Privacy Act – before separately addressing Kearns's 2015 and 2016 requests. As an initial matter, however, it pauses to note that the adequacy of the FAA's 2015 search for Plaintiff's Accountability Board case records is no longer in dispute. Kearns originally argued that the agency had not conducted a sufficient search for documents relating to the specified Board case. See Compl., ¶¶ 42-45; ECF No. 11 (Joint Status Report). In its Motion and Reply, the FAA stated that regardless of whether Plaintiff in fact sought the "entire case file" or the final case report, he has been provided with all extant relevant documents. In other words, even construing Kearns's request in the broadest possible light, "there are no other documents to release" regarding the Accountability Board case. See MSJ at 7. In light of such assurances, Plaintiff now rightfully "concede[s] the adequacy of the FAA's searches." Pl. Reply at 2.

### A.    FOIA and Privacy Act

Although FOIA and the Privacy Act both "evidence Congressional concern with open government, and especially[] accessibility to government records," the statutes "seek in different ways to respond to the potential excesses of government." Greentree v. U.S. Customs Serv., 674

F.2d 74, 76–78 (D.C. Cir. 1982). Specifically, the two acts differ in their intended beneficiaries: the Privacy Act was "designed to provide <u>individuals</u> with more control over the gathering, dissemination, and accuracy of agency information about <u>themselves</u>," whereas FOIA was "intended to increase the <u>public's</u> access to governmental information." <u>Id</u>. (emphasis added).

Put broadly, "[t]he basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." <u>John Doe Agency v. John Doe Corp.</u>, 493 U.S. 146, 152 (1989) (citation omitted). The statute is concerned with transparency and provides a means by which citizens may "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." <u>Dep't of Air Force v. Rose</u>, 425 U.S. 352, 361 (1976) (citation omitted). As befits its name, the Privacy Act is, by contrast, largely preoccupied with "safeguard[ing] the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records." <u>Bartel v. Fed. Aviation Admin.</u>, 725 F.2d 1403, 1407 (D.C. Cir. 1984); <u>Blazy v. Tenet</u>, 194 F.3d 90, 96 (D.C. Cir. 1999) (noting that unlike FOIA, the Privacy Act's primary purpose is not disclosure). In pursuit of this overarching goal, however, the Act does provide for certain forms of disclosure in order to allow an individual to "ensure[] that his records are accurate and properly used." <u>Id.</u> Individuals who wish to obtain such materials, but are "wrongly denied access to records pertaining to them[,] may bring a civil action to compel the agency to disclose the records." 5 U.S.C. § 552a(g)(1)(B) (creating cause of action for improper withholding); <u>id.</u>, § 552a(g)(3)(A)-(B) (outlining relief available in such an action). The Privacy Act, like FOIA, thus provides certain routes by which individuals may obtain the release of information stored by government agencies.

The question arises, however, of what an agency is to do when a requester asks for information under both FOIA and the Privacy Act. When faced with such inquiries, agencies must tread the line between the transparency favored by the former act and the discretion mandated by the latter. See Blazy, 194 F.3d at 96 (noting that "the two statutes sometimes work at cross purposes"). In doing so, they are guided by the explicit directive of both statutes that access to records under each is available without regard to exemptions under the other. See Martin v. Office of Special Counsel, Merit Sys. Prot. Bd., 819 F.2d 1181, 1184 (D.C. Cir. 1987). Assuming both statutes apply to the requested documents, "[i]f a FOIA exemption covers the documents, but a Privacy Act exemption does not, the documents must be released under the Privacy Act; if a Privacy Act exemption but not a FOIA exemption applies, the documents must be released under FOIA." Id. at 1184. Although this sounds like a sphinxian riddle, in practice it simply means that a petitioner requesting documents under both FOIA and the Privacy Act is "entitled to the cumulative result of what both [statutes] provide." Id. (citation omitted). The interaction between the two statutes thus boils down to a rather straightforward edict: "Where a request for documents is made under both FOIA and the Privacy Act, the responding agency must demonstrate that the documents fall within some exemption under each Act." Barouch v. U.S. Dep't of Justice, 962 F. Supp. 2d 30, 66 (D.D.C. 2013) (internal quotation marks omitted). The question for the Court here, therefore, is how to apply this rule to Kearns's various FOIA and Privacy Act requests.

B.     2015 Requests

The Court turns first to Kearns's claims arising from his 2015 requests for documents relating to his Accountability Board case. Because his Complaint broadly addresses grievances with respect to the "request for Accountability Board documents," the Court assumes that he

seeks to challenge the determinations of both his July 4, 2015, FOIA request and his November 7, 2015, FOIA and Privacy Act request. It begins its analysis with an inquiry into the latter, as Defendant asserts that Kearns is barred from bringing such claims under the doctrine of administrative exhaustion.

### 1. *November 2015 Request*

According to the FAA, Kearns never appealed its determination regarding his November 2015 FOIA and Privacy Act request, and he therefore cannot now assert grievances related to that inquiry. <u>See</u> MSJ at 10; ECF No. 12-10 (Declaration of Barbara Stance), ¶¶ 3-5. As the agency notes, the regulations promulgated by the Department of Transportation (the parent agency of the FAA) provide that a party contesting a FOIA or Privacy Act determination must seek recourse via a series of administrative routes before filing suit in federal court. <u>See</u> 49 C.F.R. § 7.32; 49 C.F.R. § 10.51; <u>McKart v. United States</u>, 395 U.S. 185, 194 (1969). Under this Circuit's caselaw, moreover, FOIA requesters generally must fulfill that statute's administrative-appeals process before turning to the courts. <u>See</u> <u>Oglesby v. U.S. Dep't of the Army</u>, 920 F.2d 57, 61-62 (D.C. Cir. 1990). Defendant contends that because Kearns failed to take these requisite steps, he is barred from challenging the FAA's decision regarding his November 2015 request. <u>See</u> MSJ at 10-11.

In response, Kearns does not dispute that he did not appeal the agency's December 2015 determination of his November request. Yet he nonetheless asserts that he did, in fact, exhaust his administrative remedies in relation to that inquiry. <u>See</u> Opp. at 9. According to Plaintiff, because he appealed the FAA's determination of his July 2015 request, and his "November 7, 2015, request should have been unnecessary in light of the FAA's admitted failure to process his July 8, 2015, request under both FOIA and the [Privacy Act], he has in fact exhausted his

administrative remedies." Id.  Put more clearly, Kearns seems to assert that because he undertook the November request as a means of correcting or supplementing his July 2015 inquiry, he was only required to exhaust his administrative remedies with respect to the initial request.  As this Court has noted before, however, FOIA's exhaustion requirements "are not mere formalities to be routinely ignored, some unseemly morass of bureaucratic red tape."  Cable News Network, Inc. v. Fed. Bureau of Investigation, 271 F. Supp. 3d 108 (D.D.C. 2017).  Instead, exhaustion in FOIA cases is regarded as a "core component of orderly procedure and good administration" – a doctrinal safeguard that preserves agency authority and judicial efficiency.  Id. (internal quotation marks omitted).  Here, Kearns is attempting to leapfrog those administrative checks by claiming exhaustion of his November request on the coattails of his July appeal.  Rejecting this maneuver, the Court instead agrees with the FAA that he did not exhaust the available administrative remedies.

Kearns's claims regarding his November 2015 Privacy Act request are similarly barred.  Indeed, the caselaw is clear that, just as with FOIA, before a plaintiff may bring a cause of action to compel disclosure of records under the Privacy Act, he must first exhaust administrative remedies.  See Barouch, 962 F. Supp. 2d at 67 ("As with FOIA, once a Privacy Act request has been processed, a plaintiff is required to exhaust all administrative remedies before bringing an action to compel disclosure of documents."); Mulhern v. Gates, 525 F. Supp. 2d 174, 187 (D.D.C. 2007) ("[A] plaintiff must exhaust the administrative remedies established by an agency's Privacy Act regulations before bringing suit . . . to compel disclosure.").  Here, because he did not appeal the FAA's determination regarding his November 2015 Privacy Act request, Kearns did not pursue the full extent of his administrative remedies.  See 5 U.S.C. § 552a(e)-(f).  Although he argues that he nonetheless "constructively exhausted" his Privacy Act claims, see

Opp. at 10-11, the law is clear that such a route to exhaustion is not available under the statute. See Barouch, 962 F. Supp. 2d at 67-68 (holding that a plaintiff may not constructively exhaust Privacy Act disclosure claims). Indeed, exhaustion under the Privacy Act, unlike under FOIA, is a jurisdictional threshold to challenging an agency determination. Sandoval v. U.S. Dep't of Justice, 2017 WL 5075821, at *7 n.5 (D.D.C. Nov. 2, 2017) (noting that "exhaustion requirement under the Privacy Act is jurisdictional [and] the exhaustion requirement under FOIA is not"). Because Kearns has not exhausted his Privacy Act and FOIA claims arising from his November 2015 request, the Court will not now permit him to challenge the FAA's determination in this suit.

### 2. *July 2015 Request*

Next up are his claims regarding his initial request for the Accountability Board documents in July 2015. His Complaint alleges that the FAA improperly considered this request under FOIA alone, rather than also addressing the disclosure provisions of the Privacy Act. See Compl., ¶¶ 46-47. According to Plaintiff, the Agency violated "its own implementing regulations" by failing to process his request under the Privacy Act – a proposition he supports via citation to a Department of Transportation regulation stating that "first-party FOIA requests" are "also process[ed] . . . in accordance with the Privacy Act if the records reside in a Privacy Act system of records." Id., ¶ 46 (citing 49 C.F.R. § 7.25(a)).

While Kearns correctly cites the DOT regulation, he errs with respect to its application in this case. The determination "that a system of records exists from which the record at issue was retrieved is a prerequisite to a substantive Privacy Act claim." Mulhern, 525 F. Supp. 2d at 180 n.10; see Henke v. United States Dep't of Commerce, 83 F.3d 1453, 1459 (D.C. Cir. 1996) (observing that "the determination that a system of records exists triggers virtually all of the

other substantive provisions of the Privacy Act").  The threshold question here is thus whether the Accountability Board documents Kearns requested and received fall within such a system.

The Privacy Act defines a "system of records" as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual."  5 U.S.C. 552a(a)(5).  The D.C. Circuit has enumerated two criteria for information to be within a "system of records" under this definition: (1) the "information must be 'about' an individual," Tobey v. NLRB, 40 F.3d 469, 471 (D.C. Cir. 1994), and it must be actually "retrieved by the name" or identifier of an individual.  Henke, 83 F.3d at 1460.  While it may seem counterintuitive that the method of retrieval can determine whether a system of records exists, that is the law.  The Circuit has held, in fact, that records containing an individual's name are not necessarily about that individual, see Tobey, 40 F.3d at 471, and that the capability to retrieve records based on individual identifiers is not tantamount to actually retrieving them based on such markers.  See Henke, 83 F.3d at 1460.  Instead, courts must look to the "function and purpose for which the information was gathered" and to the agency's actual retrieval practice in order to determine whether a given set of documents constitutes a Privacy Act system of records. See Fisher v. Nat'l Institutes of Health, 934 F. Supp. 464, 472 (D.D.C.), aff'd, 107 F.3d 922 (D.C. Cir. 1996) (citation omitted).

Here, the Court concludes that the Accountability Board files requested and received by Kearns were not retrieved from a "system of records" under the criteria of the Privacy Act. Indeed, Plaintiff has provided no evidence that the documents he requested in November 2015 were actually retrieved by his name or other personal identifier.  Rather, the FAA makes clear that the files provided to Kearns were instead retrieved by reference to the Accountability Board

case number.  See Def. Reply at 4-5; Declaration of Andrew Robinson, ¶¶ 5-10; SUMF, ¶ 16 (stating that search for Accountability Board documents was conducted using "different iterations of the . . . case number as a search term").  Because the documents released pursuant to Plaintiff's November 2015 request were not retrieved by the name or identifier of an individual, they do not exist within a system of records for the purposes of the Privacy Act.  See McCready v. Nicholson, 465 F.3d 1, 9 (D.C. Cir. 2006) (stating that "[t]he key limitation in the Act's definition of 'system of records' is its use of 'retrieved'").  As that statute does not provide an independent basis for disclosing the records withheld from the FAA's response to the July 2015 request, the Court finds that the agency was under no obligation to process Kearns's request in accordance with the Privacy Act.

*    *    *

In light of Kearns's lack of administrative exhaustion with respect to his November 2015 request and the inapplicability of the Privacy Act to his July 2015 request, the Court concludes that Plaintiff cannot prevail on his claims regarding the Accountability Board records.  It will therefore grant summary judgment for Defendant on this issue.  See Fisher, 934 F. Supp. at 472. (granting summary judgment for defendant on Privacy Act claim because "plaintiff ha[d] failed to demonstrate that the [requested] files constituted a system of records at the time of the disclosures").

C.      2016 Request

In his second count, Kearns alleges a series of shortcomings with respect to the FAA's treatment of his 2016 inquiry regarding the two internal-security-investigation files.  According to Plaintiff, the agency improperly invoked FOIA's disclosure exemptions when withholding documents from the released Reports of Investigation and related files.  He asserts both that such

14

exemptions "do not apply to material which must be released under the Privacy Act," and that, even if the FOIA provisions did apply to the records at issue, Defendants construed the exemptions too broadly. See Compl., ¶ 58. The FAA rejoins, unsurprisingly, that there was nothing amiss with its disclosure and withholding determinations. It believes that it properly withheld exempt documents and information under Exemptions 5, 6, and 7(C). See MSJ at 11-16. The Administration asserts, moreover, that the Privacy Act does not compel any greater level of disclosure with respect to the internal-investigation files. Id. at 19. The Court begins with the Privacy Act and then looks at the FOIA exemptions.

        1. *Privacy Act*

     The Court can, in light of its analysis with respect to the 2015 request, easily resolve Kearns's 2016 Privacy Act claims. As with his request for the Accountability Board files, the Reports of Investigation requested and released in 2016 do not constitute records residing in a Privacy Act "system of records." There is no indication that the investigation files were stored under, or retrieved by, Kearns's "name or some other personal identifier." Instead, the FAA affidavits make clear that the investigation files were retrieved via reference to the case numbers provided in Plaintiff's FOIA request – numbers that are associated with the given investigation, not with the individual respondent. See Decl. of Stephanie Carrasquillo, ¶¶ 4-5. Because the ROIs released by the FAA in response to Kearns's 2016 request do not constitute documents from a "system of records" under the Privacy Act, that statute provides no recourse for Plaintiff in seeking greater disclosure of such materials. See Augustus v. McHugh, 825 F. Supp. 2d 245, 257 (D.D.C. 2011) (rejecting Plaintiff's claim that Report of Investigation was maintained in system of records under Privacy Act, as it was not "retrieved by name, social security number or

any other personal identifier"); <u>Lee v. Geren</u>, 480 F. Supp. 2d 198, 207 (D.D.C. 2007) (holding

that "ROI is not a record contained within a system of records for purposes of the Privacy Act").


                 2.   *Exemption 5*

Having put to rest Plaintiff's Privacy Act assertions, the Court next addresses his

challenge to the FAA's withholdings under FOIA.  First, Exemption 5.  This exemption shields

documents of the type that would be privileged in the civil-discovery context, allowing an

agency to withhold "inter-agency or intra-agency memorandums or letters that would not be

available by law to a party other than an agency in litigation with the agency," including records

protected by the attorney-client privilege, the attorney work-product doctrine, and the

"deliberative process privilege." <u>Judicial Watch, Inc., v. Dep't of Justice</u>, 365 F.3d 1108, 1113

(D.C. Cir. 2004); 5 U.S.C. § 552(b)(5).  This final privilege covers "documents reflecting

advisory opinions, recommendations and deliberations comprising part of a process by which

governmental decisions and policies are formulated." <u>Dep't of Interior v. Klamath Water Users</u>

<u>Protective Ass'n</u>, 532 U.S. 1, 8 (2001) (quoting <u>NLRB v. Sears, Roebuck & Co.</u>, 421 U.S. 132,

150 (1975)); <u>accord</u> <u>In re Sealed Case</u>, 121 F.3d 729, 737 (D.C. Cir. 1997).  "The 'key question'

in identifying 'deliberative' material is whether disclosure of the information would 'discourage

candid discussion within the agency.'" <u>Access Reports v. DOJ</u>, 926 F.2d 1192, 1195 (D.C. Cir.

1991) (quoting <u>Dudman Comms. Corp. v. Dep't of Air Force</u>, 815 F.2d 1565, 1567-68 (D.C. Cir.

1987)); <u>see</u> <u>Nat'l Sec. Archive v. CIA</u>, 752 F.3d 460, 462 (D.C. Cir. 2014) (explaining purpose

"to encourage the candid and frank exchange of ideas in the agency's decisionmaking process").

Although Kearns broadly asserts that "FOIA Exemption 5 does not apply," Opp. at 15, he

is unable to articulate any substantive theory supporting this position.  Giving Plaintiff the

benefit of the doubt, the most the Court can glean from his filings is that he seems to believe that the Privacy Act trumps the application of FOIA Exemption 5. Kearns therefore contends that the FAA erred in invoking this exemption, as he asserts that he was entitled to the ROIs under the Privacy Act. The Court, however, has already explained why the Privacy Act is inapplicable here.

As to FOIA, the Court concludes that the FAA appropriately applied Exemption 5 to certain materials in the released investigation files. See, e.g., MSJ, Exh. 16 (Vaughn Index for FOIA 2016-009336), Entries 9, 17. After reviewing the relevant documents *in camera*, the Court is assured that the information redacted under this exemption is, in fact, either legal advice from FAA attorneys falling under the attorney-client privilege or "deliberative material" the disclosure of which would "discourage candid discussion" within the agency regarding drug-abatement activities and internal investigations. See Engberg v. U.S. Dep't of Justice, 2011 WL 4502079, at *4 (M.D. Fla. Aug. 12, 2011) (concluding that ROI was "an intra-agency document containing pre-decisional legal analysis" and upholding redactions under FOIA Exemption 5). The Court, accordingly, will grant summary judgment in favor of Defendant with respect to the FAA's withholding under Exemption 5.

### 3. *Exemptions 6 and 7(C)*

Last is the FAA's withholding of documents and redactions pursuant to FOIA Exemptions 6 and 7(C). The agency's use of these two exemptions in this case was coterminous – if it invoked one with respect to the documents released to Kearns, it also invoked the other. See Exh. Nos. 15, 16 (Vaughn Indices for ROIs). The Court thus need only determine if one of these FOIA carve-outs applies, as information falling under a single exemption may permissibly be withheld.

The Court begins with Exemption 6. This protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). In order to apply this provision, agencies and reviewing courts are instructed to conduct a balancing act under which they must weigh "the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." Beck v. Dep't of Justice, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (quoting Davis v. U.S. Dep't of Justice, 968 F.2d 1276, 1281 (D.C. Cir. 1992)). Importantly, if the requesting party cannot demonstrate a public interest in disclosure, it cannot be compelled, as "something . . . outweighs nothing every time." Nat'l Ass'n of Retired Fed. Employees v. Horner, 879 F.2d 873, 879 (D.C. Cir. 1989); see Consumers' Checkbook Ctr. for the Study of Servs. v. HHS, 554 F.3d 1046, 1056 (D.C. Cir. 2009) ("[W]e need not balance the non-existent public interest against every physician's substantial privacy interest in the Medicare payments he receives."). Here, the Court concludes that this maxim of FOIA (and physics) resolves the Exemption 6 claims.

Turning first to the privacy-interest side of the scale, the FAA invoked Exemption 6 to withhold the names, other identifying information, and personal data of multiple third parties. Specifically, the agency applied the exemption to redact: (1) the names and identifying information of witnesses providing information about the complaints against Kearns, see MSJ, Exh. 16 (Vaughn Index for FOIA 2016-009336), Entries 1 & 2; MSJ, Exh. 15 (Vaughn Index for FOIA 2015-007559), Entries 5 & 6; (2) information about the medical history or conditions of witnesses, see Exh. 16, Entry 3; (3) the names and identifying information of other employees and contractors mentioned in the complaints against Kearns, id., Entries 4 & 5; Exh. 15, Entry 4; (4) the names and identifying information of third parties associated with drug testing or

involved in drug-abatement investigations, see Exh. 16, Entries 6, 7, & 14; (5) information about the performance assessments of federal employees other than Kearns, id., Entry 8; (6) names and identifying information of other employees and contractors subject to internal investigations or Accountability Board complaints, id., Entries 10, 11, & 12; Exh. 15, Entries 1, 2, & 3; and (7) the names and identifying information of employees' family members and other non-employee third parties.  See Exh. 16, Entries 15 & 16.

The FAA's Declaration and the Vaughn Indices accompanying the released ROIs explain the rationale behind each redaction in the materials.  See Exh. 16; Carrasquillo Decl., ¶¶ 5-11.  The Court, moreover, has compared the redacted ROI documents given to Plaintiff with the unredacted copies provided for *in camera* inspection.  The vast majority of withholdings consist of careful and pinpointed redactions of names, words, clauses, and passages that conform with the agency's proffered reasoning.  The question is whether this undisclosed personal information falls under the protected privacy interests of Exemption 6.

For information to be so withheld, its disclosure must "compromise a substantial, as opposed to a *de minimis*, privacy interest."  See, e.g., Multi Ag Media LLC v. Dep't of Agric., 515 F.3d 1224, 1229 (D.C. Cir. 2008) (citation omitted).  In this Circuit, "[t]he threat to privacy . . . need not be patent or obvious to be relevant."  Pub. Citizen Health Research Grp. v. Dep't of Labor, 591 F.2d 808, 809 (D.C. Cir. 1978).  The threat to privacy, though, must be real rather than speculative.  See Rose, 425 U.S. at 380 n.19 ("The legislative history is clear that Exemption 6 was directed at threats to privacy interests more palpable than mere possibilities."); Carter v. Dep't of Commerce, 830 F.2d 388, 391 (D.C. Cir. 1987) (stating that "[w]ithholding information to prevent speculative harm" is contrary to FOIA's pro-disclosure policy).  Here, the Court agrees with the FAA that the threat to privacy arising from the disclosure of the redacted

personal information is substantial and real, rather than speculative.  Disclosing such information

would associate third parties with internal agency investigations and threatens to identify them as

witnesses to or victims of alleged workplace misconduct.  See Brown v. U.S. Dep't of Justice,

2015 WL 1237274, at *6 (E.D. Cal. Mar. 17, 2015) (addressing redactions from agency ROI and

holding that invasion of privacy would occur "by disclosing names and other identifying

information which would reveal the identity of and disclose personal information about those

individual(s) who allegedly provided information to the [agency]"); Engberg, 2011 WL

4502079, at *6 (upholding redactions from agency ROI under Exemption 6 because "release of

information relating to or otherwise identifying the private individuals would constitute a clearly

unwarranted invasion of personal privacy").

    Looking to the other side of the scale, the Court finds the public interest in disclosure to

be nil.  Kearns is unable to explain how the public would be served by knowing the sensitive

personal information of those involved in the FAA's internal investigations.  While Plaintiff may

have his own interest in identifying his accusers, FOIA is not concerned with the desires of the

individual requester.  Rather, the only valid public interest under the statute is one that serves

FOIA's core purpose of shedding light on an agency's performance of its statutory duties.  See

Reporters Comm., 489 U.S. at 773.  "'Information about private citizens . . . that reveals little or

nothing about an agency's own conduct' does not serve a relevant public interest under FOIA."

Consumers' Checkbook Ctr., 554 F.3d at 1051 (quoting Reporters Comm., 489 U.S. at 773); see

Prop. of People v. United States Dep't of Justice, 2018 WL 1912857, at *7 (D.D.C. Apr. 23,

2018) (finding no public interest in release of FBI records relating to Donald Trump's

interactions with agency prior to becoming President, as such information would not shed light

on FBI's performance of "its substantive law enforcement duties").

Here, Kearns is entirely unable to explain how disclosing the third-party information at issue in the ROIs would shed light on the FAA's performance of its statutory duties.  See Opp. at 14-15.  The Court also cannot identify any such public benefit to disclosure, and it therefore concludes that the privacy interests at stake are sufficient to justify withholding.  See Lewis v. FAA, 83 F. Supp. 3d 949, 966 (D. Or. 2015) ("Given the significant privacy interests at stake and a weak public interest[,] the names of the subject of the investigation and any witnesses, and any other facts and information in the ROI that could lead to the identity of those names, are properly redacted under Exemption 6.").

Having found that the materials in the Reports of Investigation were properly withheld under Exemption 6, the Court need not delve into the FAA's use of Exemption 7(C) nor resolve the parties' dispute over whether the ROIs and related documents are "records or information compiled for law enforcement purposes."  5 U.S.C. § 552(b)(7).  Instead, finding that the "something" of the present privacy interests outweighs the "nothing" of the absent public interest, the Court will grant summary judgment for Defendant with respect to the agency's withholdings under Exemption 6.

D.    Segregable Information

The final contested issue is Kearns's claim that the FAA violated FOIA when it did not disclose "reasonably segregable" non-exempt information included in the Reports of Investigation.  See 5 U.S.C. § 552(b); Assassination Archives & Research Ctr. v. CIA, 334 F.3d 55, 58 (D.C. Cir. 2003) (agency must "disclose all reasonably segregable, nonexempt portions of the requested record").  According to Plaintiff, the FAA "has been, at best, overzealous in its application of redactions."  Reply at 7.  Kearns contends that, even if FOIA exemptions apply, the agency has withheld more information than necessary from the ROIs and attachments it

released, and that portions of the redacted materials are in fact "reasonably segregable." Id. at 7-8.

In response, the FAA notes that non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions." Mead Data Cent., Inc. v. Dep't of the Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977). Here, the agency argues that any non-exempt information withheld from the ROIs is intertwined with material that falls under one of the claimed FOIA exemptions. See MSJ at 19-20. The Court agrees, both because the FAA employees who processed the records for release have averred that they reviewed the responsive records and that all reasonably segregable material was provided to Plaintiff, see Robinson Decl., ¶ 7; Carrasquillo Decl., ¶ 11, and because the Court has itself reviewed the withholdings *in camera* and is satisfied that non-exempt information is in fact inextricably intertwined. See Mead Data Cent., 566 F.2d at 261 n.55 (holding that court need not require "agency to commit significant time and resources to the separation of disjointed words, phrases, or even sentences"). Finding that the agency satisfied its obligation to release all reasonably segregable information, the Court will compel no further disclosure.

## IV.    Conclusion

For these reasons, the Court will grant the FAA's Motion for Summary Judgment and deny Kearns's Cross-Motion for Summary Judgment. A separate Order so stating will issue this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date:  May 15, 2018